# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JOHN A. GLOVER,                          )
                                         )
    Plaintiff,                       )
                                         )
        v.                       )          Case No.   13-cv-1272
                                         )
CAROLYN W. COLVIN,                       )
Commissioner of Social Security,         )
                                         )
    Defendant.                       )

## O R D E R  &  O P I N I O N

This social security and disability benefits appeal is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 8) and Defendant's Motion for Summary Affirmance (Doc. 12). The motions have been fully briefed and are ready for ruling. For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted in part and denied in part and Defendant's Motion for Summary Affirmance is denied in part and granted in part.

### BACKGROUND[1]

**I.**    ***Procedural History***

On July 21, 2009, Plaintiff John A. Glover applied for disability insurance benefits and Supplemental Security Income ("SSI") under Titles II and XVI of the

---

[1] While this Court reviews the entire administrative record, it focuses its analysis and discussion on the issues and evidence raised by the parties. Plaintiff must "cite to the record by page number the factual evidence which supports the plaintiff's position." CDIL-LR 8.1(D). Thus, the Court will not scour the record for additional evidence that might support Plaintiff's claims. Furthermore, since Plaintiff is represented by counsel, the failure to cite particular pieces of evidence in the record will be deemed a waiver of his reliance on that evidence.

Social Security Act, claiming that he became disabled as of March 29, 2009, due to fibromyalgia and a mood disorder. (R. at 64).[2] Plaintiff filed again on October 15, 2009, claiming that his disability began on November 30, 2008. (R. at 138). His claim was initially denied on February 17, 2010. (R. at 65). Plaintiff filed for reconsideration on May 18, 2010 (R. at 67) and was again denied on August 16, 2010. (R. at 81-83). On September 13, 2010, Plaintiff filed a written request for a hearing, which was held on July 13, 2011. (R. at 22). On August 16, 2011, the Administrative Law Judge ("ALJ") issued an opinion finding that Plaintiff was not disabled and thus not eligible for disability insurance benefits or SSI. (R. at 22-33). On September 6, 2011, Plaintiff filed a request for review of the ALJ's decision (R. at 129), which was ultimately denied on April 16, 2013. (R. at 1-4). This final denial made the ALJ's decision the final decision of the Commissioner of Social Security. (R. at 1). Plaintiff then filed his Complaint (Doc. 1) with this Court on June 19, 2013.

II.    *Relevant Medical History*

Plaintiff is currently a forty-eight years old man who, at the time of the hearing before the ALJ, was six feet and one inch tall and weighed 235 pounds. (R. at 24). Plaintiff suffers from multiple impairments, including obesity, fibromyalgia, degenerative changes to his lumbar and cervical spines, arthritis, bursitis, carpal tunnel syndrome, a history of seizures, a history of substance abuse, depression, and a personality disorder. (R. at 24). Plaintiff takes multiple medications for his

---

[2] Citation to R._____ refers to the page in the certified transcript of the entire record of proceedings provided by the Social Security Administration.

medical conditions, including Diazepam, Depakote, Naproxen, Cyclobenzaprine, Vicodin, Oxycodone, Trazodone, and Excedrin Migraine. (R. at 25, 233).

Plaintiff's primary care provider referred him for pain treatment to Dr. Joseph Couri of the Methodist Medical Group Rheumatology on June 5, 2008. (R. at 300). Dr. Couri noted that Plaintiff had "tenderness in his neck, back, gluteus and trochanters, lateral forearms, anterior chest wall, anterior neck and medial hamstrings," which are typical fibromyalgia tender points. (R. at 301). Dr. Couri also found "possibly slight swelling in [Plaintiff's] 3rd [metacarpophalangeal joints] but not definite," as well as "some difficulty straightening his right 4th and 5th fingers all the way." (R. at 301). Dr. Couri diagnosed Plaintiff with arthralgia, fibromyalgia, and possible inflammatory arthritis in the hands. (R. at 302).

Plaintiff saw Dr. Couri again on June 23, 2009, complaining of chronic pain, especially in his right neck and upper back. (R. at 307). Dr. Couri observed tenderness in Plaintiff's neck, back, and gluteus muscles. (R. at 307). Dr. Couri ordered images of Plaintiff's cervical spine, which were obtained on September 24, 2009. (R. at 274). The images showed a mild anterior osteophyte on Plaintiff's C5-C6 vertebrae with mild degenerative changes to his spine. (R. at 274-75). Plaintiff saw Dr. Couri again on October 27, 2009. (R. at 304-06). Plaintiff complained of continuing pain and episodes brought on by suspected bipolar disorder. (R. at 304). Plaintiff also complained of increased stress from his relationship with his mother and niece. (R. at 304).

Dr. Couri referred Plaintiff to Dr. Pratapkumar Attaluri for a psychiatric evaluation on October 29, 2009. (R. at 314-16). Dr. Attaluri diagnosed Plaintiff with a personality disorder with antisocial personality traits. (R. at 315). Dr. Attaluri also commented that Plaintiff's history of seizures is questionable and that Plaintiff's anger issues are likely related to his antisocial personality, his lack of empathy towards others, and possible seizures. (R. at 315).

On January 20, 2010, Plaintiff saw Dr. Jane H. Velez of the Illinois Department of Rehabilitation Services for a psychological evaluation. (R. at 319). Dr. Velez noted that Plaintiff's attentional capacity was somewhat distracted because he was so irritable and impatient. (R. at 322). Dr. Velez diagnosed Plaintiff with a mood disorder not otherwise specified without psychotic features; intermittent explosive disorder; a personality disorder not otherwise specified with borderline, narcissistic, and antisocial features; a seizure disorder; fibromyalgia; arthritis; and chronic pain. (R. at 322).

On February 7, 2010, W. Nordbrock, Ph.D., a Social Security Consultant, conducted a psychiatric review technique to evaluate the severity of Plaintiff's mental impairments. Dr. Nordbrock commented that the mental status examination performed by Dr. Velez was likely invalid due to Plaintiff's impatience, disinterestedness, and lack of cooperation. (R. at 336).

On February 12, 2010, Dr. David Mack, another Social Security Consultant, completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff's physical exams are essentially normal except for tenderness in the

lumbar area. (R. at 345). Dr. Mack further noted mild degenerative changes in Plaintiff's lumbar and cervical spines. (R. at 345).

Plaintiff went back to Dr. Couri on February 1, 2010, complaining of chronic pain in his shoulders, neck, and back. (R. at 348-49). Dr. Couri noticed that Plaintiff's shoulders were moderately painful on palpation and noted that Plaintiff had decreased movement as a result. (R. at 348). Dr. Couri diagnosed a mild osteoarthritic component on Plaintiff's neck and lumbar spine films, as well as signs of acromioclavicular arthritis on a bone scan. (R. at 348). Dr. Couri also noted that Plaintiff's pain was "10/10." (R. at 349). Plaintiff saw Dr. Couri again on July 2, 2010, complaining of severe pain. (R. at 355). Dr. Couri diagnosed Plaintiff with continuing, chronic symptoms of fibromyalgia, shoulder bursitis with impingement, carpal tunnel syndrome, and mild arthritis in his spine. (R. at 355). Plaintiff received injections of Celestone and Xylocaine in tender points on his neck and lumbar spine. (R. at 355).

In August of 2010, Drs. Henry Rohs and Linda Lanier completed a reconsideration of Plaintiff's medical condition. (R. at 357-59). These doctors noted Plaintiff's diagnoses of fibromyalgia, mild degenerative joint disease of his lumbar spine, a mood disorder not otherwise specified, intermittent explosive disorder, and a personality disorder. (R. at 359). However, they also noted that Plaintiff had a full range of motion in all of his joints and normal nerve exam results. (R. at 359). They concluded that "[Plaintiff's] allegations regarding his limitations seem excessive

when compared to the objective findings." (R. at 359). They also remarked that no Medical Source Statement ("MSS") was provided.

Plaintiff saw Dr. Couri on September 28, 2010, October 15, 2010, and January 10, 2011. (R. at 370, 367, 373). Dr. Couri continued Celestone and Xylocaine injections, while prescribing Meloxicam and Doxepin. (R. at 370, 367). On November 5, 2010, Dr. Couri prepared a medical opinion on Plaintiff's ability to do work-related physical activities. (R. at 362-66). At that time, Dr. Couri described Plaintiff's diagnoses as osteoarthritis in the neck, back, and shoulders; fibromyalgia; chronic bursitis in the shoulders with rotator cuff tendinitis; anxiety; and depression. (R. at 362). Dr. Couri noted Plaintiff's tenderness in the shoulders and fingers and that a sonogram of Plaintiff's shoulders showed acromioclavicular osteoarthritis, bursitis, and tendinitis. (R. at 362). Dr. Couri indicated that Plaintiff was unable to lift and carry more than ten pounds on a frequent or occasional basis and that Plaintiff could stand or walk less than two hours at a time (R. at 364), while also being unable to sit longer than four hours at a time. (R. at 363). Dr. Couri then indicated that Plaintiff could not sit longer than thirty minutes without changing positions, could not stand longer than twenty minutes without changing positions, and needed to walk between five and ten minutes at a time to relieve his pain. (R. at 365). Finally, Dr. Couri indicated that Plaintiff needed the ability to shift between sitting and standing at will and that occasionally he would need to lie down on bad pain days. (R. at 365). Dr. Couri indicated that Plaintiff's impairments were expected to last at least twelve months. (R. at 362).

Plaintiff visited Dr. Couri again on April 15, 2011, complaining of chronic pain and increasing numbness and pain in his hands. (R. at 382). At this visit, Dr. Couri injected Plaintiff's bilateral carpal tunnels and his neck, back, and gluteal tender points with Celestone and Xylocaine. (R. at 382). Dr. Couri also discussed the possibility of carpal tunnel surgery with Plaintiff. (R. at 382).

## III.    *The ALJ's Opinion*

The ALJ issued her decision to deny Plaintiff's disability claims on August 16, 2011. (R. at 33). She concluded that Plaintiff met the insured status requirements; that he had not engaged in substantial gainful activity since March 29, 2009; and that he suffered from multiple severe impairments, namely obesity, fibromyalgia, degenerative changes to his lumbar and cervical spines, arthritis, bursitis, carpal tunnel syndrome, a history of seizures, a history of substance abuse, depression, and a personality disorder. (R. at 22-33). However, Plaintiff's impairments did not meet any of the listed impairments in the Code of Federal Regulations and thus he was not legally disabled because he possessed the RFC necessary to perform medium, light, or sedentary work, including his past relevant work as a dishwasher and packager. (R. at 22-33).

The ALJ discounted Dr. Couri's assessments of Plaintiff, stating that he "appear[ed] to rely soly upon [Plaintiff's] subjective complaints and then conclude[d] [Plaintiff] is disabled and unable to work." (R. at 27). The ALJ further stated that "Dr. Couri has not built an adequate bridge between his opinion evidence regarding [Plaintiff's] ability to perform work activity and actual medical findings." (R. at 27).

She also found that Plaintiff "has not demonstrated he is unable to ambulate effectively or to perform fine and gross manipulations with his hands." (R. at 28).

The ALJ also found that "neither consulting psychological examination identified defects in social functioning that would prevent working." (R. at 29). She made note of Plaintiff's comment to a psychologist that he was only applying for disability benefits because his unemployment benefits were about to expire. (R. at 29). Thus, the ALJ concluded that Plaintiff "has not demonstrated he satisfies the requirements of any mental Listing." (R. at 29).

The ALJ then discounted Dr. Couri's assessment of Plaintiff's RFC. (R. at 30). She did not afford Dr. Couri's contributions "any significant weight, much less controlling weight." (R. at 30). Instead, she "considered the opinions of the state agency physicians who found [Plaintiff] limited to medium work activity" and "concur[ed] with their assessments that [Plaintiff] is not disabled and does not meet or equal any Listing." (R. at 31). Further, the ALJ noted that "[Plaintiff] has certified every two weeks for two years that he is able and ready to work, in order to obtain unemployment benefits." (R. at 31). Thus, "considering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that Plaintiff is not disabled. (R. at 32).

## I.  *Standard of Review*

The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). "The standard of review that governs decisions in disability-benefit cases is deferential." *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). When a claimant seeks judicial review of an ALJ's decision to deny benefits, this Court must only "determine whether [the ALJ's decision] was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence, 'although more than a mere scintilla of proof, is no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (citations omitted).

To determine whether the ALJ's decision is supported by substantial evidence, this Court will review the entire administrative record, but will not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). While this Court must ensure that the ALJ "build[s] an accurate and logical bridge from the evidence to [her] conclusion," she need not address every piece of evidence. *Clifford*, 227 F.3d at 872. The Court will remand the case only where the decision "lacks evidentiary support or is so poorly

articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## II.    *Disability Standard*

To qualify for disability insurance benefits and/or SSI under the Social Security Act, claimants must prove that they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). Additionally, the impairment must be of a sort "which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). With respect to a claim for a period of disability and disability insurance benefits, claimants must also show that their earnings record has acquired sufficient quarters of coverage to accrue disability insurance benefits and that their disability began on or before the date that insurance coverage ended. 42 U.S.C. §§ 416(i)(3), 423(c)(1)(B).

The Commissioner engages in a factual determination to assess claimants' abilities to engage in substantial gainful activity. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980). To do this, the Commissioner uses a five-step sequential analysis to determine whether claimants are entitled to benefits by virtue of being disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999).

In the first step, a threshold determination is made as to whether the claimant is presently involved in any substantial gainful activity. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in such activity, the Commissioner then considers the medical severity of the claimant's impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairments meet the twelve-month duration requirement, the Commissioner next compares the claimant's impairments to a list of impairments contained in Appendix 1 of Subpart P of Part 404 of the Code of Federal Regulations and deems the claimant disabled if the impairment matches the list. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not match the list, then the Commissioner considers the claimant's Residual Functional Capacity ("RFC")[3] and past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If claimants are still able to perform their past relevant work, then they are not disabled and the inquiry ends. *Id.* If they are unable to perform their past relevant work, then the Commissioner considers the claimants' RFC, age, education, and work experience to see if they can transition to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If a transition is not possible, then the claimant is deemed disabled. *Id.*

The plaintiff has the burden of production and persuasion on the first four steps of the Commissioner's analysis. *McNeil*, 614 F.2d at 145. However, once the plaintiff shows an inability to perform any past relevant work, the burden shifts to the Commissioner to show an ability to engage in some other type of substantial gainful employment. *Id.* (citing *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 861 (7th Cir. 1978)).

---

[3] Residual Functional Capacity is defined as "the most [claimants] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Without mentioning any of the five steps of the sequential evaluation process used to make determinations of disability, Plaintiff argues that the ALJ committed five errors in concluding that his RFC permitted him to return to his previous jobs as a dishwasher or a packager. (Doc. 9 at 9-16). Plaintiff argues that first, "[t]he ALJ erred in considering nonsignificant [sic] credibility issues regarding his functional limitations." (Doc. 9 at 9). Second, "[t]he ALJ erroneously misstated his ability to function." (Doc. 9 at 11). Third, "[t]he ALJ improperly disregarded the opinion of Dr. Couric [sic], his treating physician." (Doc. 9 at 12). Fourth, the "ALJ does not understand the medical record and plays doctor." (Doc. 9 at 15). Finally, "[t]he ALJ failed to consider all of his impediments in his RFC." (Doc. 9 at 16). In response, the Commissioner argues that the ALJ "reasonably accounted for Plaintiff's impairments and [her decision] was supported by substantial evidence." (Doc. 13 at 4-17).

## I. Plaintiff's Credibility

Plaintiff first argues that the ALJ made invalid credibility determinations of the Plaintiff that led to an improper determination of his RFC. (Doc. 9 at 9). "An ALJ is in the best position to determine a witness's truthfulness and forthrightness." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). The Plaintiff cherry-picks only three justifications relied upon by the ALJ and ignores several others that contributed to the ALJ's determination. This Court "will not upset credibility determinations on appeal so long as they find some support in the

record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). However, the ALJ must give "specific reasons that are supported by the record for [her] finding." *Skarbek*, 390 F.3d at 505. A credibility determination is patently wrong if it "lacks any explanation or support." *Elder v. Astrue,* 529 F .3d 408, 413 (7th Cir. 2008). The ALJ is required to "sufficiently articulate [her] assessment of the evidence to 'assure us that [she] considered the important evidence ... and to enable us to trace the path of [her] reasoning.' " *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

First, Plaintiff complains that the ALJ observed that Plaintiff received unemployment benefits for two years at the time of his application for disability benefits, during which time he certified every two weeks that he was able to work and was seeking work. (R. at 24, 31). Plaintiff contends that the ALJ erred in relying on the certifications as a factor undermining Plaintiff's credibility. This Court cannot conclude that the ALJ erred in considering the certifications to the unemployment office.

As the Commissioner correctly observes, Plaintiff's "decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work" should play a role in assessing his subjective complaints of disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). The Plaintiff in *Schmidt* argued (unsuccessfully) that people "may be forced into applying for work due to desperate financial situations or do so out of a

misconception regarding the extent of their own physical limitations," *id.*, so an ALJ should not necessarily regard such certifications as irrefutable evidence that the claimant can actually perform work.

Here, Plaintiff does not even argue that he made the unemployment certifications out of dire necessity or misconception. Instead, he asserts that the practice of certifying that one is able to work and is seeking work is common in farming as the work is seasonal and he has done this for years. (Doc. 9 at 9). That response fails to address the fact it is totally inconsistent for Plaintiff to claim on one hand that he is able to work and is seeking work while simultaneously claiming on the other hand that he cannot work.

Even if Plaintiff was unable to work and was exaggerating his ability to work in order to obtain unemployment benefits, the ALJ noted that Plaintiff stated to Dr. Velez that he was only applying for disability benefits due to his unemployment benefits expiring. (R. at 320). That statement implies Plaintiff's purported inability to work was not the real reason for seeking disability and SSI benefits; but that Plaintiff's need to obtain a different source of income was the actual catalyst for his claims of disability. Plaintiff fails to address this statement and the Court concludes the ALJ did not err in considering it. Moreover, Plaintiff also fails to address his revelation to Dr. Couri on June 23, 2009 that he was still looking for work, (R. at 307), which tends to support a conclusion that he was not exaggerating his ability to work in order to obtain unemployment benefits. This is important because Plaintiff claims he was disabled as of March 29, 2009. (R. at 22).

Second, Plaintiff argues that the ALJ impermissibly discounted his credibility because Dr. Couri was advocating on his behalf and communicating directly with Plaintiff's attorney. (Doc. 9 at 10). This is incorrect. The ALJ noted in her opinion that Plaintiff's attorney requested a second letter from Dr. Couri because "apparently the first note was not sufficient to establish disability." (R. at 26). This statement leaves the impression that the ALJ was discounting Dr. Couri's opinion, not Plaintiff's motives in soliciting Dr. Couri's opinion. Thus, the Court concludes the ALJ did not discredit the Plaintiff's claims and testimony due to any perceived advocacy by his treating physician, Dr. Couri.

Third, Plaintiff claims that the ALJ discounted his credibility due to discrepancies in his work history. (Doc. 9 at 10-11). The Court finds that the ALJ did err on this point. The ALJ states: "The record reveals the claimant has reported conflicting stories about his past work and why he left. On one occasion he reported he left because of his pain, but then on another occasion it was due to a conflict with his boss regarding his hours (Exhibits 3F, 5F, 8F)." The Court has reviewed the official record of this appeal and has particularly scrutinized the three exhibits referenced by the ALJ—Exhibits 3F, 5F and 8F. The Court has not found any reference in the cited exhibits to an occasion where the Plaintiff lost his job due to a conflict with his boss regarding his hours. Since the Court cannot locate the referenced evidence the ALJ purports establishes a discrepancy, it must conclude the ALJ's credibility determination on this point is patently wrong because it lacks support in the record. *Elder,* 529 F .3d at 413.

Generally, courts "will not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron*, 19 F.3d at 335. "To evaluate credibility, an ALJ must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.' SSR 96–7p. In other words, the ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and "functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

Plaintiff only mentions three of the ALJ's justifications for discrediting his subjective testimony. The first reason the ALJ offered for not finding the Plaintiff credible was Plaintiff's bi-weekly certification to a government authority for two years that he was able and ready to work. The second reason was his concession that he was only seeking disability benefits because he was becoming ineligible for continued unemployment benefits. The third reason was the alleged discrepancy in the causes of his unemployment, which lacks support in the record. As explained above, the Court considers the first two reasons to discredit Plaintiff's subjective testimony and complaints of disability as legitimate and supported by the record.

These were not the ALJ's only reasons for discounting Plaintiff's testimony though. Elsewhere in her opinion, the ALJ explained how other factors, including the lack of objective medical evidence in the record and Plaintiff's reported daily activities belied Plaintiff's claims as to the severity of his impairments. *See* R. at 27

("The only identifiable symptom was subjective pain and the extreme functional limitations are not supported by objective findings or test results, e.g. diagnosing carpal tunnel without first obtaining the test results that he said was needed for the diagnosis."), at 30 ("…the degree of pain and limitation alleged by the claimant, is not consistent with the objective medical evidence regarding these impairments, or his functional ability, including his reported daily activities.")[4] and ("He demonstrates during examination the ability to sit, stand, walk, with little restriction in his joints/muscles. His allegations of disabling pain have all been in the context of pursuing his application for disability benefits. As found by the DDS medical expert when they evaluated the evidence (Exhibit 11F), his range of motion, sensory, reflex and motor nerve exams were normal, he ambulated with a normal gait; they determined his allegations were excessive when compared to the medical findings."). The ALJ also noted that Dr. Couri prescribed physical therapy for Plaintiff but he did not follow through with it (R. at 347) because of fear of pain and unwillingness to risk not being able to take care of his dog. (R. at 26, 320). Lastly, the ALJ also considered Plaintiff's statement to Dr. Velez that "[t]he only reason I am here is that my unemployment is running out. When that runs out, I won't have any money. I have to get this, because if I don't, I won't be able to get my medication, then I'm screwed." (R. at 320).

Nonetheless, the Court cannot simply assume the ALJ would have reached the same conclusion regarding Plaintiff's credibility had she not been under the

---

[4] The ALJ mentions Plaintiff's daily activities but does not explain how these reported daily activities belie Plaintiff's disability claims.

erroneous perception that Plaintiff gave disparate reasons for the causes of his unemployment. The ALJ clearly relied on the Plaintiff's lack of overall credibility in expressing his functional limitations in her decision to discount Dr. Couri's opinion. (R. at 30) ("After reviewing the longitudinal record and Dr. Couri's progress notes, it appears he bases his opinions mostly upon the claimant's subjective complaints, because there are minimal objective findings. . . . He relies upon the claimant's statements regarding the claimant's ability to work, but the claimant is not credible regarding his level of functional limitations."). However, the ALJ did not explain in her opinion the relative weight she assigned to each of the reasons that contributed to her decision to find the Plaintiff not credible.

Consequently, the ALJ's opinion did not leave the Court with enough information to "trace the path of her reasoning," *Carlson*, 999 F.2d at 181, as to how much Plaintiff's alleged discrepant work history factored into her overall assessment of Plaintiff's credibility. Again, it is clear that the Plaintiff's lack of credibility was central to the ALJ's later finding that the Plaintiff is not disabled within the meaning of the applicable regulations. Thus, the Court finds this case must be remanded to the ALJ to reassess her credibility determination in light of the Court's finding that there is no support in the record for her conclusion that Plaintiff gave inconsistent reasons for his unemployment that belied his claims of disability. Upon reviewing the record, the ALJ should determine and articulate to what extent her incorrect finding of Plaintiff's discrepant work history affected her

credibility determination and whether her decision to find Plaintiff not credible can stand in light of the other reasons stated in her opinion.

## II.  Dr. Couri's Medical Opinion

Plaintiff argues that the ALJ erred by not giving controlling weight to Dr. Couri's opinion since he was Plaintiff's treating physician. (Doc. 9 at 12-14). The treating physician rule "directs the [ALJ] to give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (internal quotations and citations omitted). However, "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)). Additionally, "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice*, 384 F.3d at 371. Still, the ALJ must cite substantial evidence in the record to overcome the treating physician's controlling weight and "a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "[I]f indeed the treating source's opinion passes muster under [20 C.F.R.] § 404.1527(d)(2), then 'there is no basis on which the administrative law judge, who is not a physician, could refuse to

accept it.'" *Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011) (quoting *Hofslien*, 439 F.3d at 376).

Plaintiff was referred to Dr. Couri beginning in 2008 and continuing through the time of the ALJ's decision. (Doc. 9 at 14). Dr. Couri is a rheumatologist, (R. at 25), specializing in diseases and injuries to the joints and soft tissues. In addition to the medical records of these appointments provided by Plaintiff, Dr. Couri wrote two letters regarding Plaintiff's condition, one on March 23, 2010, (R. at 347), and a second on November 5, 2010. (R. at 360-61). In these letters, Dr. Couri described Plaintiff's chronic pain caused by fibromyalgia, osteoarthritis, and bursitis. (R. at 347, 360-61). Dr. Couri describes multiple medications, injections, and sonograms that he administered in diagnosing Plaintiff, as well as other unidentified tests. (R. at 347, 360-61). He goes on to say that Plaintiff stopped working due to excessive absences and that Plaintiff has trouble standing and doing repetitive tasks. (R. at 347, 360-61).

The ALJ considered these letters and Plaintiff's medical records from Dr. Couri's office, but concluded that they constituted only "opinion evidence" and did not give them controlling weight. (R. at 26). Further, the ALJ explicitly states that Dr. Couri "rel[ied] solely upon [Plaintiff's] subjective complaints and then conclude[d] [Plaintiff] is disabled and unable to work." (R. at 27). The ALJ notes that "Dr. Couri does not explain how he arrived at these conclusions, nor cite to any objective test results or findings for the diagnoses other than fibromyalgia." (R. at 27). She also notes that Dr. Couri's second letter, written only at the request of

Plaintiff's attorney, is suspicious in that it much more explicitly made a case for disability, while the first letter more believably stated Plaintiff's condition. (R. at 26). Instead, the ALJ gave more weight to "actual medial [sic] findings *or lack thereof*, e.g. no mention of muscle atrophy, sensory loss, motor weakness, significant limitation in range of motion, etc." (R. at 27-28) (emphasis added).

While the ALJ repeatedly cited Dr. Couri's purported lack of objective diagnostic procedures in arriving at his opinions of Plaintiff's medical conditions, she also simultaneously noted that x-rays showed mild degenerative changes in Plaintiff's cervical and lumbar spines and that physical examinations of Plaintiff revealed tender points associated with fibromyalgia. (R. at 30). In addition, Dr. Couri mentioned that he diagnosed tendinitis and bursitis with multiple sonograms. (R. at 360). Further, the medical records from Plaintiff's visits to Dr. Couri mention multiple x-rays by which Dr. Couri diagnosed osteoarthritis in Plaintiff's neck, back, and shoulders. (R. at 274, 348). Thus, the ALJ's claims that Dr. Couri presented only Plaintiff's subjective complaints as diagnostic evidence are not completely accurate.

Nevertheless, the ALJ's error in failing to properly note that Dr. Couri did perform some objective diagnostic techniques does not, in and of itself, render her assessment of Dr. Couri's opinion incomplete or incorrect. A treating physician's opinion can be properly discounted when it is internally inconsistent or contradicted by other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *Hofslien*, 439 F.3d at 376; *Knight*, 55 F.3d at 314. Instead of advancing legal argument that Dr. Couri's

opinion was not inconsistent or contradictory to other evidence in the record, Plaintiff first, merely points out that Plaintiff's normal physician referred him to Dr. Couri and then second, gives a historical account of Dr. Couri's treatments. (Doc. 9 at 12-15). Plaintiff also argues that the treating physician for purposes of the applicable regulations was Dr. Larry Patton.[5] The Commissioner, however, asserts that the ALJ did properly discount Dr. Couri's evidence in favor of contradictory evidence in the record. (Doc. 13 at 10-12).

For instance, the Commissioner correctly points out that the ALJ cited Plaintiff's lack of traditional symptoms associated with disabling pain. The ALJ cited the absence of muscle atrophy, sensory loss, motor weakness, and significant limitations in range of motion. (R. at 27-28). Plaintiff regards this as an example of the ALJ playing doctor, but the Court views it as a proper review of indicia of the severity of musculoskeletal impairments. *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, Listing 1.00 ("Diagnosis and evaluation of musculoskeletal impairments should be supported, as applicable, by detailed descriptions of the joints, including ranges of motion, condition of the musculature (e.g., weakness, atrophy), sensory or reflex changes, circulatory deficits, and laboratory findings, including findings on x-ray or other appropriate medically acceptable imaging."). The ALJ was not simply making this up; she found support for her observations in the findings of the Social Security Medical Consultants, Drs. Mack and Rohs, regarding Plaintiff's physical limitations, who had reviewed the record of Plaintiff's impairments. (R. at 345

---

[5] The Court does not understand the significance of this assertion given that nothing in the record touches on Dr. Patton's observations or opinions of Plaintiff's impairments.

("Physical exams are essentially normal with the exception of tenderness in lumbar area."), and 359 ("The [claimant] has full [range of motion] of all joints including the lumbar spine. Sensory, reflex, and motor nerve exams are normal. Ambulates independently with a normal gait. . . . The [claimant's] allegations regarding his limitations seem excessive when compared to the objective findings.")).

Moreover, the ALJ also identified legitimate reasons to suspect the objectivity of Dr. Couri's opinions. First, Dr. Couri was requested to provide Plaintiff's attorney with a second letter "regarding [Plaintiff's] difficulties"; the clear implication of which is that the first letter was insufficient to establish Plaintiff was legally disabled. (R. at 346). Second, Dr. Couri also clearly considered matters reserved for the ALJ or a vocational expert, Plaintiff's work history and education (R. at 347), which is not entitled to any particular weight. 20 C.F.R. § 404.1527(e).

The ALJ explained:

> After reviewing the longitudinal record and Dr. Couri's progress notes, it appears he bases his opinions mostly upon the claimant's subjective complaints, because there are minimal objective findings. X-rays have revealed some mild degenerative changes of the cervical and lumbar spines. (Exhibit 1F 26-27). Examinations reveal only some tender points and very minimal but subjectively decreased range of motion on occasion (Exhibits 3F, 8F, 12F, 13F). Dr. Couri diagnosed carpal tunnel syndrome, but noted it was without an EMG study (Exhibit 16F). He relies upon the claimant's statements regarding the claimant's ability to work, but the claimant is not credible regarding his level of functional limitations.

Since the bulk of Dr. Couri's evidence does merely recite Plaintiff's subjective complaints and since the ALJ did identify legitimate reasons to disbelieve that Dr. Couri was accurately describing Plaintiff's condition, her decision to decline to give

Dr. Couri's opinion controlling weight and instead weigh all the evidence in denying Plaintiff's disability claims was not wrong and does not warrant reconsideration.

## III.    Plaintiff's Mental Ability to Function

Plaintiff next argues that the ALJ "omitted serious consideration of problems on the job" in concluding that his mental impairments were only mild to moderate. (Doc. 9 at 11). In order to support a finding of mental impairment, the degree of limitation imposed by the impairment must be such as to interfere seriously with Plaintiff's "ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). In assessing the severity of mental disorders, the Commissioner uses four criteria for functional limitations: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.00. To satisfy the standard for finding disability, the mental impairment must result in two of four possible limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* "Marked" is defined as "more than moderate but less than extreme." *Id.*

Plaintiff claims that the ALJ misstated his ability to function and discusses only interpersonal issues that led to him losing several jobs. (Doc. 9 at 11-12). Even assuming that these issues constitute a marked difficulty in social functioning, Plaintiff fails to demonstrate that at least one other criterion has been met. The

ALJ describes Plaintiff's mild limitation in the activities of daily living, including fixing food for himself if necessary, talking on the phone, visiting family members, watching television, driving a car, tending his personal hygiene, and attending a rock concert. (R. at 28). Plaintiff points to slight omissions in the ALJ's description, including his inability to do household chores, his inability on one occasion to grip a twelve-ounce soda can, and his inability to remain at the concert until the end. (Doc. 9 at 12). However, those impairments are physical, not mental. Plaintiff offers no evidence that his mental impairments have a marked impact on his activities of daily living.

The ALJ went on to conclude that none of the four criteria have been met by Plaintiff's mental impairment. (R. at 28-29). She concedes that he has moderate difficulty in social functioning and concentration, persistence, and pace due to his anger issues, (R. at 29), but a marked difficulty, as required for a finding of mental disability, must rise above a moderate level. 20 C.F.R. § 404, Subpart P, Appendix 1. Thus, the ALJ properly found that Plaintiff is not disabled due to his mental impairments.

## IV.    Playing Doctor

Plaintiff next claims that the ALJ was playing doctor by substituting her own medical judgment for that of Dr. Couri. (Doc. 9 at 15). It is obvious that the ALJ did not take Plaintiff's subjective reports of pain as controlling. An "ALJ cannot make [her] own independent medical determinations about [Plaintiff]." *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731

(11th Cir. 1983)). "[T]he ALJ must consider subjective complaints of pain if [Plaintiff] can establish a medically determined impairment that could reasonably be expected to produce the pain." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing 20 C.F.R. § 404.1529). "Further, the ALJ cannot reject [a plaintiff's] testimony about limitations on [his] daily activities solely by stating that such testimony is unsupported by the medical evidence." *Id.* (citing *Clifford*, 227 F.3d at 871).

Plaintiff has been diagnosed with fibromyalgia, osteoarthritis, bursitis, tendinitis, and possible carpal tunnel syndrome. All of these medical impairments are known to cause pain. Additionally, Plaintiff has submitted medical records indicating that Dr. Couri diagnosed these conditions upon performing some objective medical tests. Although this means that Plaintiff has established medically determined impairments that <u>can</u> produce pain, the ALJ may still properly consider all evidence, including any bases for Plaintiff's subjective complaints of pain discernable in the record, in making a determination of Plaintiff's disability.

The ALJ cites the absence of certain symptoms commonly associated with disabling pain, including muscle atrophy, sensory loss, motor weakness, and significant limitations in range of motion. (R. at 27-28). Plaintiff mistakenly believes that the ALJ considered the absence of these symptoms as the absence of fibromyalgia. (Doc. 9 at 15). The ALJ never stated that Plaintiff <u>does not</u> suffer from

fibromyalgia, instead only stating that Plaintiff's fibromyalgia and other medical conditions did not render him completely disabled and unable to work. (R. at 32).

It is not sufficient for Plaintiff "to show that [he] had received a diagnosis of fibromyalgia . . . since fibromyalgia is not always (indeed, not usually) disabling." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). Plaintiff needed to show the ALJ that his fibromyalgia and other conditions combined to make him unable to "engage in any substantial gainful activity." 42 U.S.C. §§ 416(i)(1), 1382c(a)(3)(A). The ALJ did not make a mistake of law in this instance and the Court does not believe that the ALJ was playing doctor or substituting her own medical judgment for those of the physicians involved in this case.

## V.     Plaintiff's RFC

Plaintiff's final argument is that the ALJ erred in failing to consider all of his impairments in finding him able to perform medium, light, and sedentary work. (Doc. 9 at 16). RFC is defined as "the most [claimants] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Plaintiff does not argue that he is unable to perform the light or sedentary work of which the ALJ also found him capable of performing; rather he challenges the ALJ's finding that he can perform his past relevant work as a dishwasher and packager. (Doc. 9 at 16).

Once a claimant shows an inability to perform any past relevant work, the burden shifts to the ALJ to show an ability to engage in some other type of substantial gainful employment. *McNeil*, 614 F.2d at 145 (citing *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 861 (7th Cir. 1978)). The ALJ did this by

including the evidence of a vocational expert who testified that, given Plaintiff's age, education, work experience, and RFC, there were 22,300 jobs in Illinois and 346,800 jobs, not including dishwashers or packagers, nationwide that Plaintiff can perform. (R. at 32). Thus, even if the ALJ erred in finding Plaintiff capable of performing past relevant work, she did not err in identifying thousands of other positions in the medium, light, and sedentary categories that Plaintiff could perform. Plaintiff does not argue why he cannot obtain one of these positions or perform the functions necessary to work in one of these positions.

CONCLUSION

The ALJ does not have to make a perfect decision, but she must make a decision "supported by substantial evidence." 42 U.S.C. § 405(g); *Rice*, 384 F.3d at 369. To do this, she must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The soundness of the ALJ's decision that the Plaintiff is not disabled is largely dependent on her low assessment of Plaintiff's credibility without which she fails to build an accurate and logical bridge from the evidence to her conclusion.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 8) is GRANTED IN PART and DENIED IN PART and that Defendant's Motion for Summary Affirmance (Doc. 13) is DENIED IN PART and GRANTED IN PART. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. This case is REMANDED to the Commissioner of Social Security for reconsideration of

Plaintiff's credibility in regard to the alleged discrepancies in work history. IT IS SO ORDERED.

CASE TERMINATED.

Entered this 30th day of September, 2014.

_____s/ Joe B. McDade_____
JOE BILLY McDADE
United States Senior District Judge
